# IN THE UNITED STATES DISTRICT COURT FOR THE
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

DOCKET NO. 3:12cr239-GCM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| (14) JAMES TYSON, JR. | ) | |

THIS MATTER is before the Court on the United States of America's Motion for Preliminary Order of Forfeiture for $35,158.95 (Doc. No. 991). For the reasons set forth in the Motion, the Motion is GRANTED.

THE COURT FINDS that the following background facts and excerpts from the record, and law support the Motion:

In September 2007, prior to the Grand Jury returning an Indictment charging Defendant, United States Magistrate Judge Carl Horn, III issued a Seizure Warrant[1] for funds in XYZ Brighton Developers, LLC (hereafter, "Brighton Developers"), Bank of America Account *6363. Law enforcement executed the Seizure Warrant and obtained $35,158.95 from the Brighton Developers Account (hereafter, "the Funds"), as reflected in the check attached to the Motion as Exhibit 1.

Subsequently, a Grand Jury returned the Superseding Bill of Indictment (Doc. No. 158) against, amongst others, Defendant. As set forth in the Superseding Indictment, Defendant, along with his mother (another charged co-conspirator who has also pled guilty), operated Brighton Developers and Defendant controlled bank accounts at Bank of America in the name of Brighton Developers. As set forth in the Superseding Indictment, Defendant and the Enterprise used

---

[1] W.D.N.C. Case 3:07-MJ-188 (Sealed).

Brighton Developers in furtherance of both the Enterprise's investment and mortgage fraud activities and to launder monies. As set forth in the Superseding Indictment, "Brighton Developers was used primarily (a) to solicit and receive money from investor victims; (b) to fund fraudulent mortgage transactions; and (c) to receive and distribute the proceeds from such mortgage frauds." Superseding Indictment at ¶ 83. The Superseding Indictment also identifies numerous fraudulent transactions involving Brighton Developers. Further, in the Superseding Indictment the Grand Jury found probable cause for forfeiture of the Funds seized from Brighton Developers. *Id.* at ¶ 415(b).

Defendant pled guilty without a plea agreement to all charges against him in the Superseding Indictment, namely, racketeering conspiracy (18 U.S.C. § 1962(d)), securities fraud (18 U.S.C. §§ 78j(b) and 78ff), bank fraud (18 U.S.C. § 1344), wire fraud (18 U.S.C. § 1343), money laundering conspiracy (18 U.S.C. § 1956(h)), and bank bribery conspiracy (title 18 U.S.C. § 371).

The statements and testimony of conspirator Victoria Hunt ("Hunt") in the trials of co-defendants Nathan Wolf, Denetria Myles and John Wayne Perry Jr., as well as trial exhibits from those trials, establish that Brighton Developers received more than a million dollars in criminal proceeds, using some of the proceeds from the investment fraud to fund fraudulent mortgage transactions and then using Brighton Developers to receive illegal kickbacks following those fraudulent closings. Additionally, in Exhibit A to her Affidavit (Affidavit and exhibits attached to the Government's Motion as Exhibit 2) Hunt general summarizes how (1) Brighton was not used for a legitimate purpose; (2) Brighton was used to solicit potential investor-victims; and (3) Brighton was used for the personal gain of members of the Enterprise. Affidavit Exhibit A at ¶

2.

Further, at the trial of co-defendant Perry[2], Hunt testified that Brighton Developers was the first company used by the conspiracy to steal money from people beginning in approximately 2006. Testimony of Hunt at Trial of Perry at 24:24-25:17. As Hunt testified, for example, in 2007 Brighton accounts received proceeds from defrauded professional athlete investors and then the conspirators used those crime proceeds for entertainment and to fund fraudulent mortgage transactions in 2007, including a transaction in the real property at 9215 Woodhall Lake Drive, Waxhaw, North Carolina ("Woodhall Lake") and a transaction in the real property at 7824 Clover Vale Drive, Waxhaw, North Carolina ("Clover Vale"). *Id.* at 33:20-40:11. Hunt's testimony made this clear: "the money from the investment fraud with the professional football players was used for Woodhall Lake and then that kickback from Woodhall Lake was used for Clover Vale [ . . . . ]." *Id*. at 48:4-7. Via a demonstrative exhibit from the trial and attached to the Motion as Exhibit 4, Hunt summarized the flow of the money from victim investors into a Brighton Developers account, out of a Brighton Developers account to fund the fraudulent Woodhall Lake Closing, back into a Brighton Developers account in an illegal kickback, and out of Brighton Developers again to fund the fraudulent Clover Vale closing. *Id*. at 50:10-17.

Bank documents about which Hunt testified also illustrate the use of Brighton and its accounts in the crimes. As to Bank of America Account *6363 specifically—the account from which law enforcement seized the Funds—the Perry trial exhibits included, amongst other account documents, (1) Exhibit 38c, a Bank of America Account *6363 statement identifying the flow of

---

[2] Hunt also testified about Brighton at the trial of conspirators Nathan Shane Wolf and Denetria Myles. As the Court is familiar with both trial records, which are also publicly available, in the interest of brevity the Court only summarizes portions of Hunt's testimony from Perry's trial.

$419,063 from the closing on Woodhall Lake to Account *6363 and (2) Exhibit 41A, a $127,307.36 cashier's check purchased via Account *6363 to fund the closing on Clover Vale. Those trial exhibits are attached to the Government's Motion as Exhibits 5 and 6, respectively, and show the use of Brighton Developers (and Account *6363 in particular) to receive and distribute crime proceeds.

In light of the factual record on the Funds, the substantive provisions of Title 18, Sections 981, 982, and 1963, and Title 28, Section 2461(c) mandate forfeiture in this case[3] as follows:

- **Fraud Proceeds:** Fraud proceeds are subject to forfeiture in this case via a variety statutes. Specifically, the civil forfeiture provisions of Title 18 U.S.C. § 981(a)(1)(C) provide for forfeiture of fraud and fraud conspiracy proceeds and 28 U.S.C. § 2461(c) renders those civil forfeiture provisions applicable in criminal cases such as this. *See* 18 U.S.C. § 981(a)(1)(C) (providing for forfeiture of proceeds of "specified unlawful activity" identified in 18 U.S.C. § 1956(c)(7)); 18 U.S.C. § 1956(c)(7)(A) (incorporating the definition of "racketeering activity" under 18 U.S.C. § 1961(1) to define "specified unlawful activity"); 18 U.S.C. § 1961(1)(B) (identifying wire fraud as "racketeering activity"). Similarly, 18 U.S.C. § 982(a)(2)(A)—a criminal forfeiture statute—provides for forfeiture of proceeds of fraud and fraud conspiracy offenses affecting a financial institution, such as the offenses in this case.

- **Property Involved In Money Laundering:** The criminal forfeiture provisions

---

[3] This case involves multiple intertwined legal theories of forfeiture. For an example of another recent case that involved a similar combination of legal theories of forfeiture, see *United States v. Pinson*, 2015 WL 1578726 (D.S.C. April 9, 2015).

of 18 U.S.C. § 982(a)(1) provide for forfeiture of property involved in money laundering conspiracy. Property involved in money laundering conspiracy includes both the property being laundered and property that facilitates the money laundering. *United States v. Matai*, 173 F.3d 426, **4-5 (4th Cir. 1999) (Table), *citing*, *United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir. 1997).

- **Racketeering Property:** The criminal forfeiture provisions of 18 U.S.C. § 1963(a) provide for forfeiture of, *inter alia*, interests acquired or maintained in violation of racketeering laws, interests that afford a source of influence over a racketeering enterprise, and property of any kind affording a source of influence over such an enterprise.

The Government's burden of proof on forfeiture is preponderance of the evidence. *United States v. Cherry*, 330 F.3d 658, 669 (4th Cir. 2003); *United States v. Tanner*, 61 F.3d 231, 233 (4th Cir. 1995). The Court's "determination may be based on evidence already in the record, including [ . . . ] any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B); *see also United States v. Farkas*, 474 Fed. Appx. 349, 360 (4th Cir. 2013). The Government may satisfy the preponderance burden by both direct and circumstantial evidence. *United States v. St. Pierre*, 484 F.3d 75, 86 (1st Cir. 2007).

Courts use a nexus test to determine whether assets constitute or are derived from proceeds. *Farkas*, 474 Fed. Appx. at 359, *citing*, *Libretti v. United States*, 516 U.S. 29 (1995) and *Cherry*, 330 F.3d at 669-70. Courts use the "but for" test to determine whether there is a nexus between a crime and properties that the Government contends are proceeds. "Pursuant to this test, [assets] are considered proceeds and therefore deemed forfeitable if 'a person would not

have [the assets] but for the criminal offense.'" *Id.* at 359-60 (summarizing Seventh Circuit, D.C. Circuit, Second Circuit, and Eastern District of Virginia case-law and quoting the Western District of New York); *see also United States v. Guess*, 2015 WL 1208882, *2 (W.D.N.C. March 17, 2015) (collecting cases on when the totality of the circumstances establishes that an asset is proceeds). Further, at least in the context of drug crimes, the Fourth Circuit has held that the use of a "substantial connection" test is appropriate to determine if there is a connection "between the property to be forfeited [that facilitated the offense] and the offense. [citation omitted]. Substantial connection may be established by showing that use of the property made 'the prohibited conduct less difficult or more or less free from obstruction or hindrance.'" *United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010), *citing United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir.1990) and *United States v. Santoro*, 866 F.2d 1538, 1542 (4th Cir. 1989).

Here, based on the record in this case, the Government has satisfied the preponderance standard and established both a nexus and a substantial connection. Based on the record, Brighton Developers and its accounts not only received fraud proceeds, but also were used as a vehicle to launder those fraud proceeds and afford influence over the racketeering enterprise. Therefore, the Funds seized from Brighton Developers are subject to forfeiture.

WHEREFORE, based on the aforementioned record whereby the Government has established the requisite nexus and substantial connection between the offenses and the Funds, the Government's Motion (Doc. No. 991) is **GRANTED** and the following property is ordered forfeited pursuant to Fed. R. Crim. P. 32.2(b):

**$35,158.95 in funds seized from XYZ Brighton Developers, LLC, Bank of**

America Account *6363.

Pursuant to 21 U.S.C. § 853(n)(1), the Government shall publish notice of this order; notice of its intent to dispose of the property in such manner as the Attorney General may direct; and notice that any person, other than the Defendant, having or claiming a legal interest in any of the above-listed forfeited proceeds must file a petition with the Court within thirty days of the final publication of notice or of receipt of actual notice, whichever is earlier. This notice shall state that the petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the property, shall be signed by the petitioner under penalty of perjury, and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited property and any additional facts supporting the petitioner's claim and the relief sought. The United States may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in property that is the subject of this Order, as a substitute for published notice as to those persons so notified.

Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture. If no petitions are filed, this Order shall become final by operation of law as provided for in Fed. R. Crim. P. 32.2(c)(2).

**SO ORDERED.**

Signed: May 26, 2015

*[Signature]*

Graham C. Mullen
United States District Judge